May it please the Court, I'd ask to reserve four minutes of my time for rebuttal. In this case, trial counsel did exactly what Strickland teaches he cannot do. He made a tactical decision without benefit of any investigation whatsoever, and in so doing doomed petitioner, your average middle-aged woman with no criminal history whatsoever, to conviction and life imprisonment. Trial counsel traded away the admissibility of Harold Orner's videotaped testimony for the non-admissibility of a statement by flight nurse Neal Klein that popped up all of a sudden during the jury selection of Petitioner's second trial, that Mr. Orner had said during his airlift out of the Feather River Canyon, the bitch shot me, a statement that it turns out the prosecutor didn't really want to use anyway. Trial counsel agreed to this trade with no investigation into the substance of what he was trading for. Then he tried to slough off the responsibility for this uninformed choice onto Petitioner, who was equally uninformed. This is a classic Strickland failure-to-investigate case. Well, it's not quite – yes, it may be a failure-to-investigate. Certainly, it was a strategic choice. There's no doubt about that. The question was whether it's an informed strategic choice. It was clearly not an informed strategic choice. Trial counsel initially told the trial court, according to his declaration, that he wanted a two-week continuance, and then he abandoned that request in agreeing to the trade later in the same day. No investigation at all was conducted as to the impeachability of this statement that we have conducted subsequent to Petitioner's conviction. Basically, trial counsel traded for nothing, because he would have found, as we did, that the statement was highly impeachable, including to the effect of was it even made in the first place, since several of the individuals also in the helicopter with Herold who were close to him never even heard the statement made. In terms of prejudice, the absence of the tape clearly prejudiced Petitioner, and we know this for several reasons. First, the prosecutor has told us post-trial that the tape was the most damning evidence against his case, and he wanted it kept out. The district court also found that the prosecutor was anxious to keep Mr. Orner's videotaped testimony from the jury. And we know from this Court's decision in Singh v. Prenti that the prosecutor's admission of the importance of omitted evidence is clearly significant in determining prejudice. Well, I guess we have to consider it to be very critical, because she won in the first trial in that she got a hung jury. Well, she had a hung jury in her first trial, 7 to 5 for acquittal, which is not normally the type of hung jury that we see. So I think that's all the argument you need, that this was a critical piece of evidence. Correct. It was very critical. There was no evidentiary hearing either in State or Federal court, right? There was no – we've asked all the way along and never have received. What do you expect to prove in an evidentiary hearing as far as the choice made by the defense counsel? Well, actually, Your Honor, I think given that the district court found that our declarations to be uncontroverted, which means that they're taken to be true, this Court could reverse on that. Certainly. However, if we were to have an evidentiary hearing, we've laid out in our reply brief at pages 23 to 26 basically the substance of all of our declarations. Plus, it would be an opportunity to call the Strickland expert and have him flesh out prejudice, as well as call the district attorney, Mr. Reichel, and have him state additional items of prejudice, because he never did sign his declaration that I proposed to him. That would be the purpose of an evidentiary hearing. If the Court has no further questions, I would reserve. Okay. Very good. Thank you. Mr. Riley. May it please the Court, Justin Riley on behalf of Appellee. Preliminarily, I'd like to restate that we're not here on appeal to determine whether Appellant's trial counsel's actions were reasonable, but rather to determine whether the State court reasonably determined that there was no Strickland violation. Essentially, Appellant is arguing she got a raw deal or a bad trade. She says her attorney should have more rigorously sought to gain admission of the It sure seems like a bad trade in hindsight, doesn't it? You know, I don't think so. It's my position that even if trial counsel would have stipulated to exclude the videotape alone and got nothing in return, it still would have been a reasonable tactical decision. It's our position that she got a fair trade or a ---- Why would that have been reasonable? Pardon me? Why would that have been reasonable? The videotape had evidence which wasn't favorable to her appeal. Well, there was some unfavorable stuff in there, but on balance, on balance it was favorable. I don't believe it was unbalanced because I think after all the briefing has come in, I believe it's Appellant's concession, at least for the sake of argument, that the only thing helpful in the videotape now is whether or not he had a good marriage, and he didn't really even come out and say it. Well, why did the prosecutor think that this was the most damning evidence? I have no idea why. He never did make a signed declaration. It's my position that's pretty much irrelevant what he thought. Well, we're here to figure out what defense counsel thought and what's objectively reasonable, what the prosecutor thought. Or whether an evidentiary hearing is warranted. You know, I mean, that's the secondary. I'm sorry. That's the other issue. That is. That's the second issue. An evidentiary hearing isn't warranted because, like I argued in my brief, an evidentiary hearing is held for the purpose of determining the credibility of controverted evidence or to determine whether there is some evidence that would help, some new evidence that hadn't been presented that would help or actually would have substantially affected, I believe is the term, the trial. And appellant still doesn't point to any new evidence that would come out or any controverted evidence. Counsel, assuming that the affidavits are correct or at least the representations of what she would prove are correct. And I believe the district court assumed that. Well, and we have to at this point. One, you have defense counsel making an important choice without any investigation. That's pretty serious. Two, you have prosecutor says, I wouldn't have used that evidence anyway. Well, we don't know. That's what she says. We have to draw the inferences in her favor on summary judgment. Prosecutor says, I wouldn't use the evidence anyway that was traded for. And that videotape was very damning. I mean, that would seem to be enough to get to an evidentiary hearing, wouldn't it? To figure out what evidence? Strickland error. If you make a critical strategic choice without investigating, and that causes prejudice, that's Strickland error. So I think we're assuming he didn't investigate. There was no declaration on the part that he didn't investigate. There was no allegation by any expert that he didn't investigate. Well, the timing, counsel. The timing of the deal? Yes. We don't know how long it would have taken for him to investigate the statement. But like I said, it's my position that he didn't need to investigate. Strickland doesn't necessarily in every case call for investigation every time. If it's reasonable without investigation, it's reasonable. So it's my position that the deal was reasonable whether or not he investigated because he wasn't giving up much. Certainly, in hindsight, it was a bum deal. You think so? Are you asking me or? I'm telling you. Oh, okay. Okay. Well, it certainly seems so if you take, and of course, this isn't evidence. I mean, the proposed affidavit, but if it is in fact what sort of a tender proof of what the prosecutor said, it sounds like the prosecutor hoodwinked the defense counsel, bluffed the defense counsel into a bad trade. If you accept that statement is true and if you accept that statement is somehow correct, I don't agree with that statement. And for the reasons, but an evidentiary hearing flushes all that out, doesn't it? Then we know it would flush it all out, but it's unnecessary to flush it all out because the district court accepted it all is true. Yes. So why are you quibbling now? I mean, you said, well, it's not really true. I don't accept it. I said, well, my answer was, if you don't accept them, it's critical. Go to an evidentiary hearing. He said, well, I think what I'm trying to say is if you accept that it's true, which the district court did. Yes. It's still not, it's, I'm sorry. Well, I mean, if you accept what, if you accept that it's true, you have the prosecutor saying this was a damning, the person who's in the pit saying this was really a damning  So you've at least undermined our confidence in the outcome of the trial, but for the Strickland error. Then the only question is, was it a reasonable strategic choice? We don't know. I don't believe he said he wasn't going to use the evidence. Well, and again, we understand this is just the tendered affidavit, but. The tendered affidavit, which wasn't signed, but that's, it's purports to be what was said is that I felt the net benefit to the prosecution was not great enough to justify using the statement. Yes. So he says he's not going to use the statement. And, okay. I didn't read it that way. Well, how did you read it, counsel? I'm sorry. Are we on page 56? Yes, we are. Page 55. In my opinion, the videotape was a very damning, was very damning evidence against the prosecution. Okay. And 56 says, I felt the net benefit to the prosecution was not great enough to justify me using the statement from the flight attendant. Okay. So if we accept those as true. If you accept those as true, my position is still that it's pretty irrelevant whether or not the deal was reasonable. Because, like I said, even if Appellant's Trial Counsel had stipulated to just leave out the videotape, it still would have been a good deal. In addition to excluding the videotape, which had damning evidence against him as well as damning evidence against the prosecution, because if we look at Appellant's Trial Counsel's declaration, he had some trouble with the videotape as well. So the jury hears that, you know, that the victim identified his shooter, and he was shot. The flight personnel, all of them, either stated to investigators or Ms. Schumer that the victim looked rather agitated about being shot, was very angry about this. If that evidence comes in, and then Neil Klein, who was the flight nurse, comes in and says, the victim told me the bitch shot me. I mean, that's going to affect the jury, whether or not, you know, you impeach it, whether or not, you know, you have evidence of a good marriage. It's just going to affect the jury. So he gets a mixed bag. He trades a mixed bag for the bitch shot me, which would, you know, affect a listener, you know, however it's impeached. And it's just not a good deal. Except that, he's not going to use the evidence, and it wasn't investigated. You know, I think the swap makes more sense if you investigate it and say, well, this is pretty bad evidence. My point is, you have to look at what's in the mind of defense counsel. What the prosecutor was going to do with the evidence is relevant, is not relevant. In hindsight, it's something we can look at to see whether or not he got a, you know, some sort of, whether or not he got a good trade in terms of, you know, oh, you could, you would have gotten that anyway. But you have to look at what was in his mind at the time he made that trade. Do you have some other explanation of why the jury was hung on the first trial? You know, I don't. I don't think there's any explanation of why the jury was hung. You get 12 different people. You get a group of 12 and another group of 12 that's just going to come out differently. They're going to see things differently. They're going to decide differently. The evidence was probably presented in a different way. So to point to just the videotape, I think, is not quite fair to the prosecution. And you won't have any other explanation. If you had one, you'd tell us. Any other new evidence that came in at the second trial? It was not introduced at the first trial in part because of the prosecution. Yeah. So in some, Appellant's trial counsel had a videotape with at least questionable admissibility and marginal use. Well, I think it was admissible, counsel, because this was something that had come in at the prior trial introduced by the prosecutor. So under the statute, it could come in. The videotape could come in? Yes. I think what we need to do is look at the time of the deal and what was in Appellant's trial counsel's mind. The trial judge had already given the tentative ruling that it wasn't coming in. He couldn't find a way for it to come in. Arguably, it's not admissible, but, you know, that's not quite something I'm here to argue because I think it's tangential. The videotape has marginal use to him. It's just going to show that he had a good marriage. And three or four other witnesses came and testified to that same exact information. Well, coming from him, that would be important. It would be the victim. It would be quite important. I had a good marriage. Okay. It would be important and duplicative, I think. Well, there's a big difference between the victim himself testifying about his own marriage and bystanders. That's true. It's not duplicative. That's a strange. I agree with that. But it goes to motive, which isn't an element of the offense. And the prosecution almost conceded at closing argument that, you know, we have no motive here. So, you know, marginal use is my argument. It had the negative implications, which are placing her where she was placed after the shot was fired. Now, there were some portions of the videotape that had her standing right in the doorway, which is probably where the shooter was, right after the shot was fired. And then there were other portions of the transcript where she was in bed with him when the shot was fired. Same videotape. He says, I don't know, all over the place, back and forth. So, once again, it had marginal use and negative implications. In the other hand, he had a statement directly implicating his client. And it was emotionally charged words. So he weighed that evidence. He had the tentative ruling by the judge, and he chose to make a stipulation. And that stipulation was reasonable, as shown in the briefing. Madam Justice, that doesn't agree with me, I don't think. But more importantly, the State's – the State court's determination that the trial counsel's actions were reasonable. Where in the record do we find this tentative ruling? I believe it's at my supplemental excerpts of record. I think there was only one page, so it shouldn't be too hard to find. I'll flip through it here. Ms. Schumer made several declarations up that weren't signed. Before the State court, she had also tried to – it says here on SER1, which is the only supplemental excerpt of records attached to the brief, I had just had a long conversation with James Reichel, the district attorney in charge of trying the case. And I'm going to – Do we have – I don't have it marked here, but it says in here, and I referenced it in my brief, that – Is this the Keene declaration? Keene – I think it's actually – Ms. Reichel – I'm sorry, Ms. Reichel. Ms. Schumer attached it to a State court collateral attack on the judgment. And it is her – I don't want to misrepresent this, but it is her declaration Why, that's from the conversation? Okay. She had a conversation with the DA, and this is DA Reichel, and this is what he said to her. So I believe Mr. Reichel says he was in chambers in the court right after this statement came to light, and they were having discussion regarding the admissibility of the videotape, and the judge said, you know what, it's probably not going to allow that in. It's hearsay and opinion, I think. I'd have to read through this to see exactly what it is. But it's that SDR1 supplemental excerpt. But there's no tentative ruling by the judge. There's nothing of record. Is that right? Of record, no. I mean, not in the court of transgression. No, this was in Canada. There was no in limine ruling. In limine, no. Okay, counsel. Thank you. Thank you. Rebuttal? I'll just say a few things, because my reply is – basically, my reply brief is down the line, and rather than repeat it, I would refer the Court to it. One thing that I would mention, though, is that if trial counsel thought this videotape was so bad and such a horrible thing for him, why did he let it in at the first trial without any objection whatsoever? The only reason he could have done that was because he know – he knew that overall it was more beneficial to Mrs. Orner than it was harmful to her case. And the second thing I would say is that the Attorney General is ignoring the Singh case by this Court in failing to ascribe the proper significance to Mr. Reichel's statement about the damning nature of the tape. And that's – we need to have that overlaid, this entire process. And finally, I think that we could – the Court could reverse without an evidentiary hearing here and remand Mrs. Orner back for a new trial, based upon the declarations that we have presented right now. Finally, at no time in these proceedings, which have gone on now for six years, has the prosecution ever controverted any of our evidence whatsoever. There's never been counterdeclarations filed, not one single one, in all these years. With that, if there's no further questions, I will submit it. Thank you for your argument. The case, as heard, will be submitted. We'll hear the next case on the oral argument calendar, which is United States v. Saverdra Martinez. I'm probably mispronouncing the name.
judges: B. Fletcher, Noonan, Thomas